135 months sentence for distribution of cocaine, which sentence was imposed on February 7th of 2003. And it was a resentencing after his first appeal to this court where in March 9th of 2000 he was given a 140-month sentence. This court on May 14th, 2002 reversed that with regard to the drug quantity because this court said that that drug quantity had to be proven by clear and convincing evidence. So this case then went back for resentencing. And in this appeal, while we've raised several issues, the one I want to talk about is the drug quantity because I don't believe that even at this resentencing that the drug quantity was established by clear and convincing evidence because the person that talked about this drug quantity was Manuel Galvin. And as we've argued in this appeal under the McIntyre case from the Seventh Circuit and the Mealy case from the Third Circuit where sentences have been reversed based on contradictory and conclusory statements without further explanation or details, the district court was then required to go back and do a closer examination. In here we have exactly that. We have conclusory statements from Mr. Galvin who says that, well, in this 1996, 1997 time period, there were only seven trips to California and to Arizona. But he had earlier said in statements to Agent Mosbach of the FBI that he was going down there two or three times a month. Well, you know, it's the rare drug distribution case where we have detailed records from the drug runners where all distributions are well documented and the amounts distributed to the various participants are recorded. And the case laws replete with, you know, directions to the district court judge that they can approximate quantity determinations as long as the evidence is basically reliable. Now, isn't the problem for you here that the district court judge, after listening to Galvin testify, said I find Defendant Galvin is a credible and believable witness? The district court did say that. So why is that finding clearly erroneous? I believe that finding is clearly erroneous because Mr. Galvin had made all of these first contradictory statements and, secondly, was making all of these conclusory statements. I mean, he first had told Agent Mosbach that in this time period, he was going to ---- Hey, what you're saying is you don't believe him. No. What I'm saying ---- I mean, that's not enough to say the district judge couldn't believe him. No. I'm not saying that not only do I believe him, I think the district court was clearly erroneous in finding him credible because of all of these prior contradictory statements and also because we have a drug-impaired man who said that at times he couldn't even remember his own birth date. And he went on to say that at least in his first statements to Agent Mosbach, which he couldn't recall ever making, that he had said when he was making these runs to California and to Arizona, he was doing it for three individuals, a man by the name of Ori Pfeiffer or Special, and then by my client, Mr. Taylor, and for a man named Miguel Davia. Then we get to the resentencing hearing and he doesn't recall making those statements, but that's exactly what he had said back in December of 1999. Then we also have a man who has lied because he went in to the state of Washington in order to avoid an arrest warrant in California and get a driver's license in the name of Sal Flores because he got, I believe, if I recall correctly, a brother or a cousin. He got that brother or cousin's Social Security card and birth certificate so that he could get that driver's license. And the man kept saying throughout the hearing that he, you know, he couldn't remember various things. He even said with regard to the drug quantity, he started off by saying with regard to the cocaine that it was ‑‑ Didn't the district court judge take all of that into account when he made his quantity determinations? He said, you know, he acknowledges that this witness wasn't the best witness. He does say that. And then he took the minimal amounts of all the estimates and then he ruled out, what did he take out, marijuana and methamphetamine. He excised that from any calculation. Both of which were excised from his calculation in the first appeal. I mean, I was not his lawyer in that first case, but the drug quantity in that first case was, or the first sentencing also did not include the marijuana or the methamphetamine. So, I mean, I think that the government can't argue that somehow the district court should have included those amounts. Because I think that's the law of the case. And they didn't appeal that, even the first time. And they're not appealing it now. The district court, I think, found that testimony even more incredible because he really could not give any amounts. But he was all over the board on the cocaine. He says at one point that he didn't remember how much it was. Then at the next point he's saying that it was a kilo every time. And then he's saying that it was a half kilo. He also says that he was only doing this for Mr. Taylor and Mr. Special. But then he says that there was a trip to San Diego that that was for someone else that didn't involve them. I don't believe that we have with Mr. Galvin, as this Court requires and it hopes, a sufficient indicio reliability upon which the drug quantity can be based. And it's our position that the drug quantity should be determined on the basis of what Mr. Taylor did admit to, and that was those controlled buys. Thank you. All right. Thank you. Your Honor, in this case, or excuse me, Josh Vandewetter with the United States Attorney's Office in Missoula, Montana, on behalf of the United States. In this case, the defendant would suggest that Mr. Galvin is a man who utters contradictory, inclusory statements, is in essence a liar. Of course, the United States and the district court saw it very differently. Mr. Galvin was a man who does not speak English as his native language. There was an interpreter on hand to help him express himself if he needed to, although he speaks English relatively well. And I think what the court has before it is a record that shows a man who, as Your Honor has pointed out, does not remember every detail of every trip, was indeed working for several drug organizations and testified to that. In fact, his statements were not contradictory at all. He does not remember everything, as any of us would not remember anything we do with regularity, and Mr. Galvin was certainly making drug trips with regularity on behalf of numerous drug organizations in the Tri-Cities area. One of those organizations was the one Mr. Taylor was associated with. The defendant complains that Mr. Galvin is contradictory or conclusory in that he doesn't remember speaking to Mr. Mosbach. But he did, in essence, give the same testimony at the hearing that he told Agent Mosbach. He had worked for Devoyer. Special was working with Taylor, and therefore Mr. Galvin was bringing drugs back for all of those people. He brought them back. He split them up with Taylor and Special at the same time. So the story that Galvin tells at the hearing is, in essence, the same story that he told Agent Mosbach. Now, it's certainly true that his statements prior, the ones to Agent Mosbach, if not conclusory, were summations of what he recalled, whereas the hearing was a blow-by-blow, step-by-step recollection of every trip. And it's certainly true he can't remember specifics of every trip, every week, of who he was bringing drugs back for. And that's why the district court was so cautious in eliminating methamphetamine, eliminating marijuana, and then actually cutting the amount in half to get Mr. Taylor's drug amount down to a single kilo of cocaine. As Your Honor has pointed out, the district court found Mr. Galvin was believable, and I am quoting from page 305 of the transcript, Mr. Galvin was lacking in precise details. He did provide in substance what the court thought was impressive testimony. Was there any point in the transcript that you can point to where the judge actually did a trip-by-trip analysis, minimum amount of trips, the seven trips, and added up the amount of cocaine that was? And the Court reaches its conclusion, Your Honor, at page 305 also of the transcript, where the Court says it's taken into consideration all the minimums that Mr. Galvin offered, computed a probable amount of drugs throughout all the marijuana and methamphetamine, and then cut by half. He does not, although the Court does not then go trip-by-trip. I had offered the suggestion that at least one trip to Arizona, at least one trip to California, because Mr. Galvin clearly remembered going to both places. However many times it was to each place, it was obviously one in each place. But I think the Court concluded even less than that. And you still end up with one. I beg your pardon, Your Honor? You still end up with one kilogram or whatever it was. And he still ended up with one kilogram, exactly. That's what it seemed to me. Unless the Court has further questions, then, I have no more to offer. No. Thank you very much. Thank you. Your rebuttal, Mr. Kagan. Your Honors, we would simply ask the Court to take a look at the McIntyre and Amelie case, because I believe that those are the applicable law with regard to someone like Mr. Galvin who testified. And we certainly believe that everything he said was conclusory and it was contradictory versus what he had said earlier to the FBI agent and even during the course of this hearing. So, let me see. As I recall, McIntyre was from the Seventh Circuit. Amelie was from the Third Circuit. Yes. And you don't think any of our cases or Ninth Circuit cases sort of address the issues raised here? I haven't found any. I think the Culp's case deals with estimating drug quantity, where it says that it has to be with a sufficient indicia reliability. And I don't believe that Mr. Galvin meets that. I mean, the district court judge said that if that was, if Culp's was the criteria, he would use all of his weights. So I don't believe that even that standard has been met. Counsel, are you conceding the issue of upward adjustment because of obstruction of justice? Well, I've raised it. Submit that on the brief. I want to submit that on the briefs, Your Honor. Thank you. All right. Thank you. We thank both counsel. This case is submitted for decision. Next case on the calendar is Burton versus Waddington on habeas corpus.
judges: Tashima, Paez, Bea